BOLIN, Judge.
While Albert Blackman was driving his automobile across a drawbridge on U.S. Highway #165 near Columbia, Louisiana, with Thurman R. Franklin and Clark C. Franklin riding as guest passengers, the Blackman vehicle crashed through a barricade and plunged into the Ouachita River resulting in personal injuries to Blackman and the death of the Franklin brothers. This is an action by Blackman for damages for personal injuries and medical expenses incurred by him allegedly caused by the negligence of the Department of Highways, State of Louisiana, in the operation and maintenance of the bridge and failure to provide adequate signs and barricades warning motorists of the raising of the drawbridge. Mrs. Claudette Franklin, individually and as natural tutrix of the three minor children born of the marriage between her and Clark C. Franklin, and Mrs. Freddie Franklin, surviving parent of Thurman R. Franklin, brought separate suits for the deaths of the two Franklin brothers. The three suits were consolidated for trial and on appeal. For written reasons the trial judge found defendant free of negligence and plaintiffs guilty of contributory negligence, thereby rejecting their demands, and all plaintiffs appeal.
The primary issue before this court is whether plaintiffs have shown by a preponderance of evidence that the accident was caused by the fault or negligence of defendant. This being purely a factual question the findings of the lower court should be accorded much weight.
*546 The district judge, in an excellent written opinion, stated:
* ‡ * ‡ * *
“The Ouachita River bridge at Columbia had been opened a few minutes prior to the accident in order to allow the passage of a vessel, the ‘Nina H’. At the time of the accident the bridge had been raised to a sufficient height to allow the boat to clear, and the testimony shows that all warning devices were operative. The bridge barricade was down in the lane of travel of the Blackman vehicle and was, in fact, struck by this vehicle prior to its plunge into the river.
“There is no evidence of any malfunction of the lights, signals, and warning devices on the bridge on the date of the accident. The testimony, however, by several witnesses shows that all of the lights were operating properly.” * * *
“The facts show that at 12:35 A.M. on the morning of the 17th of May, 1958, Mr. Kline Ledbetter, the bridge tender on the Ouachita River bridge, opened the bridge, for the vessel, the ‘Nina H’. He testified that the warning lights were turned on and the gates across the highway were lowered. That after the accident the only light that was not working was the one on the barricade that had been struck by the Blackman car. Mr. Ledbetter testified that he first observed the Blackman vehicle approaching from the north at approximately one thousand feet, and at this time the bridge had been raised for a couple of minutes. That the car did not appear to slow its speed until it struck the barricade. Ledbetter observed that one wheel of the car was skidding and testified that when the automobile went into the water it was at a speed of 45 to 50 miles an hour.
“Another eye witness, Mr. B. R. Duplis-sey, had stopped for the raised bridge on the south side, or Columbia side, of the river. He stated, T heard a car coming and I looked up and it hit the guardrail, and tried to — its brakes were applied and then it went on in the river.’ Mr. Duplissey was standing on the bridge at the time. He was unable to estimate the speed of the car but stated that it made a lot of noise and he felt that ‘it was going fast for the predicament that was about to take place.’ He stated that the brakes were applied at about the same time the car hit the guardrail. After the accident, in crossing over, Mr. Duplissey stated that he noticed one skidmark on the other side of the bridge and that the barricade on the north side of the bridge was broken off and lying on the bridge. Mr. Duplissey in answer to questions by the Court, recalled that the thing that attracted his attention to the Blackman vehicle was a man saying, “Look at that son of a gun.”
“One other eye witness was Mr. R. E. Mabry, who observed the accident from the north side of the river. He stated that he saw a car pass, approaching the bridge at what he thought was too fast a speed under the circumstances. That it hit the guardrail and then plunged off into the river. Mr. Mabry was a service station attendant and was sitting out in front of the service station where he worked. He had observed the bridge being raised. He had also observed the arms lower on the bridge, and the lights on the arms. He stated also that the vehicle kept coming at the same speed until it hit the barricade. His testimony was that he was paying particular attention because the car was going too fast and that he knew the bridge was up and was afraid something was going to happen. His location in front of the service station was approximately two hundred yards from the bridge.
“The only other eye witness to the incident was the plaintiff, Albert Blackman. Apparently Mr. Blackman had lived in this area all of his life and was familiar with the bridge. He said, T didn’t see no signals * * * The first time I noticed the bridge was up, this arm was out there, this steel barricade.’ He estimated that he was going approximately 43 or 44 miles an hour when he hit the barricade. He did not observe the flashing light on the bridge. His state *547 ment was that he only saw one light and this was on top of the bridge where the name of the bridge is located. Mr. Black-man testified that he did not see the 25-mile-per-hour speed limit sign. His answer was, ‘If I did, I didn’t pay no attention to it.’ He was asked if he observed the ‘Speed Zone Ahead’ sign. His answer was that he did not. He was interrogated as to whether he saw speed limit signs along the highway, and his answer was, ‘Yes.’ Upon being further interrogated as to what these signs said, his answer was, ‘Well I didn’t even read ’em, I don’t imagine, I just seen ’em. We was probably talking.’ He further stated that he saw no barricades along the side of the highway. His further testimony was that he did not see the bridge barricade either until he was right up close to it.
“The testimony shows that in addition to the warning signs on the bridge that there was a construction project immediately north of the bridge at the time of the accident. All of the construction signs and barricades were installed as shown on the construction plan. These signs consisted of barricades on the shoulder of each end of the project and at all existing roadways entering the project. Speed limit signs limiting speeds to 30 and 35 miles per hour were posted on the barricades. The testimony reveals that all of these signs were operative. This is corroborated by the testimony of Mr. Mabry, who testified that the highway was under construction and that they had barricade lights along the road.”
* * * * * *
* * * “There is further no indication that the manner in which the bridge was operated constituted any negligence on the part of the operators.
“It is therefore the opinion of the Court that the plaintiffs have failed to preponderate in their behalf, and thus their claim should be rejected at their cost.”
We have reviewed the record and find no error in the conclusions reached by the trial judge but, to the contrary, are convinced plaintiffs have failed to prove their case by a preponderance of the evidence.
We pretermit a ruling on plaintiff’s alternative plea of contributory negligence.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.